IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

NATIONWIDE PROPERTY & CASUALTY     *
INSURANCE CO.,

        *

      Plaintiff,

        *

  v.

        *

THE FIRELINE CORPORATION,         Case No. 1:20-cv-00684-JRR

        *

      Defendant/Third-Party Plaintiff,

        *

  v.

        *

CHESAPEAKE SPRINKLER
COMPANY,         *

      Third-Party Defendant.     *

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## MEMORANDUM OPINION

Pursuant to its order of June 14, 2023, the court entered judgment in favor of Defendant/Third-Party Plaintiff The Fireline Corporation ("Fireline") against Plaintiff Nationwide Property & Casualty Insurance Company on all counts set forth in Plaintiff's Complaint (ECF No. 1) and directed Fireline to submit its fee petition. (ECF No. 72.) Pending before the court is Fireline's Fee Petition seeking an award of attorneys' fees and costs. (ECF No. 75; the "Petition.") Fireline also subsequently filed a Motion for Entry of Final Judgment (ECF No. 81; the "Motion") seeking certification of judgment under Federal Rule of Civil Procedure 54(b). The court has reviewed all papers. No hearing is necessary. Local Rule 105.6 (D. Md. 2023). For the reasons that follow, by accompanying order, the Petition will be granted in part and denied in part, and the Motion will be granted.

## I.      BACKGROUND

This action arises from the rupture of a sprinkler system pipe at 7600 Maple Lawn Boulevard in Fulton Maryland (the "Property") that occurred on January 24, 2019.  (ECF No. 1 ¶¶ 3, 9.)   Plaintiff provided property insurance to the owners of the Property, Maple Lawn Homeowners Association, Inc. ("Maple Lawn").  *Id.* ¶¶ 3–4.   On January 18, 2018, Fireline entered an Inspection Agreement (the "Agreement") with Maple Lawn whereby Fireline agreed to provide annual fire alarm inspection and testing services, quarterly sprinkler inspection and testing, and annual portable fire extinguisher testing and inspection at the Property.  (ECF No. 61-2 at p. 3, 5–6.)  The Agreement includes Fireline's Standard Terms and Conditions.  *Id.* at p. 11–12.  The Agreement contains a provision on attorneys' fees, requiring: "In the event of any litigation regarding the interpretation or enforcement of this Agreement, if [Fireline] is the prevailing party it shall have its reasonable attorney's fees and costs of litigation paid by the Customer."  (ECF No. 61-2 at p. 12.)

Plaintiff filed the action in this court on March 14, 2020, contending that Fireline improperly inspected, tested, maintained, repaired, and/or serviced the sprinkler system, resulting in water collecting and freezing in the pipes.  (ECF No. 1 ¶¶ 7, 9.)  Due to the frozen water in the pipes, the sprinkler system ruptured and released a "deluge of water throughout, causing extensive and substantial damages," totaling $294,288.35. *Id.* ¶ 9.  Plaintiff sought judgment against Fireline for negligence (Count I) and breach of express and/or implied warranties (Count II).  *Id.* at p. 3–6.  Fireline filed a third party complaint against Chesapeake Sprinkler Company ("Chesapeake"), the installer of the sprinkler system.  (ECF Nos. 22, 38.)   On January 3, 2022, Plaintiff filed a crossclaim against Chesapeake, alleging direct claims of negligence for improper installation and design of the sprinkler system at the Property, and breach of warranty and breach of contract for

failure to properly install the sprinkler system.  (ECF No. 47 ¶¶ 8–9.)  On June 14, 2023, the court entered judgment for Fireline on all claims raised in Plaintiff's Complaint and awarding attorneys' fees pursuant to the Agreement.  (ECF Nos, 71, 72.)  Fireline filed the Petition on July 12, 2023. (ECF No. 75.)  The Petition includes fees accrued by the following:

> Lead and Senior Attorney Robert N. Kelly with over 45 years of experience whose billing rate is $295/hour;
>
> Senior Associate and Junior Attorney Glenn W. Golding with over 25 years of experience whose billing rate is $250/hour; and
>
> Paralegal Sarah M. Tatum whose billing rate is $110/hour.

(ECF No. 75 ¶¶ 2, 4.)   In support of its Petition, Fireline provides ten (10) exhibits detailing fees and costs incurred in the following categories: case development, background investigation, and case administration; pleadings; interrogatories, document production, and other written discovery; depositions; motions practice; hearings; trial preparation; alternative dispute resolution; fee petition preparation; and disbursements for expenses.  (ECF No. 75 at p. 4–5; ECF Nos. 75-1, 75-2, 75-3, 75-4, 75-5, 75-6. 75-7, 75-8, 75-9, 75-10.)  Plaintiff challenges certain fees asserted by Fireline.  (ECF No. 77.)   Subsequently, Fireline filed its Motion for Entry of Final Judgment, requesting the court certify that, with its award of attorneys' fees, its judgment is final pursuant to Federal Rule 54(b).  (ECF No. 81.)  Plaintiff opposes the Motion. (ECF No. 85.)

II.   **<u>ANALYSIS</u>**

### A. Attorneys' Fees

"In a diversity action such as this, a party's right to recover attorneys' fees is ordinarily governed by state law."  *Roger E. Herst Revocable Tr. v. Blinds to Go (U.S.) Inc.*, No. CIV.A. ELH-10-3226, 2011 WL 6444980, at *1 (D. Md. Dec. 20, 2011) (citing *Ranger Constr. Co. v. Prince William Cnty. Sch. Bd.*, 605 F.2d 1298, 1301 (4th Cir. 1979)); *see United Cmty. Bank, Inc.*

*v. IAAAA, Inc.*, No. GJH-20-594, 2021 WL 6064853, at *2 (D. Md. Dec. 21, 2021) (same). "Contract provisions providing for awards of attorney's fees to the prevailing party in litigation under the contract generally are valid and enforceable in Maryland." *Myers v. Kayhoe*, 391 Md. 188, 207 (2006). Where the parties to a contract have an agreement as to attorneys' fees, Maryland law allows awarding those fees. *United Cmty. Bank, Inc.*, 2021 WL 6064853, at *2 (citing *Nova Research, Inc. v. Penske Truck Leasing Co.*, 405 Md. 435, 445 (Md. 2008)).

Courts are required to undertake a reasonableness inquiry into any proposed fee before an award. *Monmouth Meadows Homeowners Ass'n., Inc. v. Hamilton*, 416 Md. 325, 333 (2010). "Even in the absence of a contract term limiting recovery to reasonable fees, trial courts are required to read such a term into the contract and examine the prevailing party's fee request for reasonableness." *Myers*, 391 Md. at 207. The party seeking recovery bears the burden to provide evidence of the reasonableness for the fact finder. *Atl. Contracting & Material Co. v. Ulico Cas. Co.*, 380 Md. 285, 316 (2004). Maryland law further limits the amount of contractual attorneys' fees to actual fees incurred. *SunTrust Bank v. Goldman*, 201 Md. App. 390, 398 (2011).

This court's previous review of the law is instructive:

> Maryland courts ordinarily utilize the "lodestar" approach when determining attorneys' fees under fee-shifting statutes. *Friolo v. Frankel,* 373 Md. 501, 504–05 (2003) (*"Friolo I"* ). However, the Maryland Court of Appeals has held that the lodestar approach is "an inappropriate mechanism for calculating fee awards" under contractual fee-shifting provisions in "disputes between private parties over breaches of contract." *Monmouth Meadows,* 416 Md. at 336. This is because a "contractual fee-shifting provision is designed by the parties, not by the legislature . . . . Thus, it usually serves no larger public purpose than the interests of the parties." *Congressional Hotel Corp. v. Mervis Diamond Corp.,* 200 Md. App. 489, 505 (2011). Rather than using the lodestar approach, a court "should use the factors set forth in Rule 1.5 [of the Maryland Rules of Professional Conduct ("MRPC")] as the foundation for analysis of what constitutes a reasonable fee when the court awards fees

based on a contract entered by the parties authorizing an award of fees." *Monmouth Meadows,* 416 Md. at 336–37.

*Roger E. Herst Revocable Tr.*, 2011 WL 6444980, at *2 (footnotes omitted).

Maryland Rule of Professional Conduct 1.5 provides a list of factors that courts may consider when assessing the reasonableness of attorney's fees, including:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment of the attorney;
> (3) the fee customarily charged in the locality for similar legal services;
> (4) the amount involved and the results obtained;
> (5) the time limitations imposed by the client or by the circumstances;
> (6) the nature and length of the professional relationship with the client;
> (7) the experience, reputation, and ability of the attorney or attorneys performing the services; and
> (8) whether the fee is fixed or contingent.

"[A] court does not need to evaluate each factor separately." *SunTrust Bank*, 201 Md. App. at 402 (2011). Specifically, MRPC 1.5(a)(3) concerns "the fee customarily charged in the locality for similar legal services." "[T]he Fourth Circuit follows the 'locality rule,' whereby '[t]he community in which the court sits is the first place to look to in evaluating the prevailing market rate.'" *Roger E. Herst Revocable Tr.*, 2011 WL 6444980, at *4 (quoting *Montcalm Pub. Corp. v. Commonwealth of Va.,* 199 F.3d 168, 173 (4th Cir. 1999)). "In the District of Maryland, this market knowledge is embedded in [Appendix B to the Local Rules for the District of Maryland: Rules and Guidelines for Determining Attorneys' Fees in Certain Cases]." *Gonzales v. Caron,* Civ. No. CBD–10–2188, 2011 WL 3886979, at *2 (D. Md. Sept. 2, 2011).

Fireline counsels' fee rates notably fall within the rates designated in the Appendix B Guidelines.  Plaintiff further does not challenge counsels' fee rates.  The court thus concludes that Mr. Kelly's rate of $295 per hour, Mr. Golding's rate of $250 per hour, and Ms. Tatum's rate of $110 per hour are fair and reasonable in light of their work and experience.

Plaintiff's opposition focuses instead on certain contested categories of fees.  After Plaintiff challenged Fireline's request for certain expert fees, Fireline subsequently withdrew its request. (ECF No. 78 at p. 2.)  Plaintiff's remaining objections fall into two general categories: fees that purportedly extend beyond the attorneys' fee provision of the Agreement and fees that are unreasonable.  (ECF No. 77 at p. 4–14.)  The court addresses both categories in turn.[1]

### 1. Fees Beyond the Purported Scope of the Agreement

Plaintiff contends that Fireline's fees related to its practice against Chesapeake Sprinkler Company and its standard of care expert fees are beyond the scope of the attorneys' fees provision of the Agreement.  (ECF No. 77 at p. 5–8.)  Fireline argues in response that Plaintiff's reading is "unduly restrictive."  (ECF No. 78 at p. 2.)  "As concerns the grant of attorney fees, Maryland follows the common law 'American Rule,' which states that, generally, a prevailing party is not awarded attorney's fees unless (1) the parties to a contract have an agreement to that effect."  *Nova Rsch., Inc. v. Penske Truck Leasing Co.*, 405 Md. 435, 445 (2008) (citations omitted). "[A]ttorney's fees provisions must be strictly construed to avoid inferring duties that the parties did not intend to create."  *Parkway 1046, LLC v. U. S. Home Corp.*, 961 F.3d 301, 313 (4th Cir. 2020) (quoting *Bainbridge St. Elmo Bethesda Apartments, LLC v. White Flint Express Realty Grp. Ltd. P'ship*, 454 Md. 475, 488 (2017)).    Maryland law requires courts apply an "objective

---

[1] Plaintiff also argues that Fireline is not entitled to attorneys' fees for fees and costs not incurred, suggesting that the identified bills could have been paid by Fireline's insurance carrier or bills were not paid in full or negotiated to a lower amount.  (ECF No. 77 at p. 15.)  Fireline makes clear in its reply that the bills submitted were all actually incurred.  (ECF No. 78 at p. 8.)

interpretation of contracts." *Bainbridge St. Elmo Bethesda Apartments, LLC*, 454 Md. at 485 (quoting *Atlantic Contracting & Material Co., Inc. v. Ulico Cas. Co.,* 380 Md. 285, 300–301 (2004)). "In interpreting the meaning of a contract, [the court] consider[s] 'the customary, ordinary, and accepted meaning of the language used.'" *Id.* (quoting *Atlantic Contracting & Material Co., Inc.,* 380 Md. at 300–301).

The court concludes here that Fireline's efforts to defend itself in this action initiated by Plaintiff are squarely within a plain reading of the attorneys' fees provision of the Agreement. The contract provision on attorneys' fees states: "In the event of any litigation regarding the interpretation or enforcement of this Agreement, if [Fireline] is the prevailing party it shall have its reasonable attorney's fees and costs of litigation paid by the Customer." (ECF No. 61-2 at p. 12.) Plaintiff initiated this action, alleging violation of the Agreement by Fireline. Unlike *Bainbridge* to which Plaintiff cites, the contract provision is not one for indemnification but a specific allowance for attorneys' fees for actions brought regarding the interpretation and enforcement of the Agreement. *See Bainbridge St. Elmo Bethesda Apartments, LLC*, 454 Md. at 488, *supra*.

Fireline reasonably initiated third-party efforts in its defense to Plaintiff's action. Plaintiff would have the court conclude that in response to Plaintiff's initiation of action regarding interpretation and enforcement of the Agreement that Fireline's efforts to defend against Plaintiff's allegations fall outside the scope of interpreting and enforcing the Agreement. Such restriction would render the provision meaningless and is contrary to any objective interpretation of the Agreement. *See Willow Constr., LLC v. John R. Crocker Co.*, No. 1334, Sept. Term 2020, 2021 WL 5003077, at *5 (Md. Ct. Spec. App. Oct. 28, 2021) ("[C]ontract interpretation can be analogized to statutory interpretation in the sense that 'no word, clause, sentence or phrase shall

be rendered surplusage, superfluous, meaningless or nugatory.'") (citing *Orkin v. Jacobson*, 274 Md. 124, 130 (1975)). The same is true for Fireline's efforts related to a standard of care expert— the efforts arose from Fireline's defense of the action initiated by Plaintiff. It is further unreasonable to expect a party to stall the defense of its case based on the pendency of a dispositive motion. Accordingly, Fireline is entitled to attorneys' fees incurred in connection with its third-party efforts and standard of care expert, as these were fees reasonably incurred in service of its defense.

## 2. Purportedly Unreasonable Fees

Plaintiff further challenges specific fees incurred. Plaintiff identifies a number of categories of fees in dispute. The court addresses each in turn.

### i. *Travel Fees for Virtual Depositions*

Plaintiff asserts that Fireline is not entitled to travel fees related to conducting fact depositions and attending the mediation, as both were conducted via Zoom. (ECF No. 77 at p. 8.) Plaintiff asserts that the travel fees amount to $6,210.48, but does not identify the specific entries it relies upon to calculate that number. *Id.* The court has reviewed the fees and expenses associated with travel related to conducting depositions and attending mediation, and identifies a total of $993.92.[2] It is entirely reasonable (if not preferable) for counsel to be physically present with the client during deposition even if opposing counsel taking the deposition appears by online platform (like Zoom), and even if the deposition is otherwise "online." This is especially so where the travel is as feasible as it is between Baltimore, Maryland and Washington, D.C. Similarly, it is reasonable, and perhaps more efficient and preferable, for counsel to be present with the client for

---

[2] Fireline's Petition includes additional travel-related fees and expenses for preparing witnesses for deposition. (ECF No. 75-4.) Plaintiff's opposition does not appear to challenge these fees, nor do they change the court's analysis here.

mediation.  Accordingly, the court finds that travel fees and expenses to be fair and reasonable and will not reduce the Petition per Plaintiff's request.

### ii.  _Interrogatory Fees_

Plaintiff contends that Fireline is not entitled to attorneys' fees incurred when it violated the Federal Rules of Civil Procedure.  (ECF No. 77 at p. 9.)  Fireline propounded upon Plaintiff 31 interrogatories—six interrogatories in excess of the 25 permitted under Rule 33.  (ECF No. 77-2.)  Plaintiff seeks to deduct $225 from the total award to account for the additional six interrogatories, calculating an average of .15 hours spent per interrogatory.  (ECF No. 77 at p. 9; ECF No 77-2.)  Fireline responded that the dispute is "scarcely worth quibbling about" but noted Plaintiff's failure to provide certain interrogatory responses.  (ECF No. 78 at p. 4.)  Because Fireline expressly exceeded the number of interrogatories permitted by the Federal Rules, the court will accordingly adopt Plaintiff's calculation and reduce Fireline's fees by $225.

### iii.  _Fees for Discovery Requests Not Served_

Plaintiff contends that Fireline should not be permitted to recover fees associated with incomplete or abandoned discovery tasks—specifically, supplemental discovery that was never served.  (ECF No. 77 at p. 9.)  Fireline contends that drafting discovery requests significantly benefits a litigant even if not served and that the requests were "overtaken by other discovery responses."  (ECF No. 78 at p. 4.)  The court's inquiry is one of reasonableness in the litigation, not one of second-guessing counsel's efforts to defend their case.  The amount of time spent on such requests—4.5 hours by Plaintiff's estimation—is not wasteful and surely not so great as to be unreasonable.  However, the court will deduct $531.00 from the total award to account for the December 14, 2020 entry, which specifically concerns additional interrogatories that Fireline intended to propound despite having already exceeded the limit permitted by Rule 33.

9

iv.   **_Duplicative Deposition Work_**

Plaintiff contends that the duplicative work of Fireline's counsel with respect to deposition preparation is unreasonable in light of the fact that Mr. Kelly, the Senior Attorney, spent 10.7 hours drafting deposition outlines for two fact depositions that Mr. Golding, the Junior Attorney, conducted.  (ECF No. 77 at p. 10–11.)  Mr. Golding then spent 9.1 hours drafting deposition outlines, which Mr. Kelly spent another 4.4 hours reviewing.  *Id.*  Fireline explained that while Mr. Kelly was lead counsel, Mr. Golding conducted the depositions and "took direction from Mr. Kelly."  (ECF No. 78 at p. 5.)

"When considering the total number of hours expended, the Court generally considers" the time and labor expended, the novelty and difficulty of the questions raised, and the time limitations imposed by the client or circumstances.  *Spriggs v. Merling*, Civ. No. JMC-20-3395, 2023 WL 1801968, at *2 (D. Md. Feb. 7, 2023).  No party here has suggested that there were any time limitations in this case that would impact this analysis, so the court will focus this analysis on the other two factors.

While it is not *per se* unreasonable for two attorneys to work on development of deposition outlines, especially when one is more junior (and there may be efficiencies to be had with a junior and senior attorney collaborating), considering the time and labor expended, and the relative lack of difficulty or novelty of the traditional fact witness deposition preparation present here, the court finds it appropriate to reduce the award accordingly.  *Cf.* Local Rules App. B (discussing the time and hours expended with two attorneys where one is more senior).  Fireline contends that Mr. Golding has more than 25 years of experience, and he is thus certainly not an inexperienced attorney where greater oversight or review may be warranted; and the duplicative efforts concerned the depositions of only two fact witnesses, which totaled just over three hours of depositions.  (ECF No. 77 at p. 11.)  While it is true that Fireline's counsel may have prepared for longer depositions,

the amount of duplicative work from two experienced attorneys on short and seemingly straightforward fact witness depositions should be discounted from the fee award.  The court therefore finds it fair and reasonable to deduct the fees associated with Mr. Kelly's preparation of his deposition outlines (on April 2, April 16, and May 14, 2021).  The court will reduce the award by $2,360.00 based on his rates and hours spent.

> ### *v.  Consent Motions*

Plaintiff contends that Fireline's 5.4 hours drafting two similar consent motions was unreasonable inefficiency.  (ECF No. 77 at p. 12.)  Fireline responds that it took counsel time to achieve opposing counsel's consent and that the good cause explanation in the motions required work.  (ECF No. 78 at p. 5.)  Given the simplicity and commonality of the motions, as well as counsel's many years of experience, the court agrees that 5.4 hours spent on two consent motions to amend a scheduling order should be downwardly adjusted; the court notes further separate entries accounting for communication with Plaintiff's counsel regarding the motions on September 16, 2020 and August 20, 2021. (ECF No. 75-5.)  To adjust to a number that is fair and reasonable, the court will allot two hours for the first consent motion, and two hours for the second consent motion applying Mr. Golding's rate.  The court will thus reduce the award by $1,000.00.

> ### *vi.  Summary Judgment and Oral Argument Preparation*

Plaintiff seeks to reduce Fireline's Petition by $1,150.50 for fees associated with its summary judgment presentation to the court and preparing for oral argument because the preparation occurred about ten months prior to the filing of the summary judgment motion and because the court did not order oral argument.  (ECF No. 77 at p. 12–13.)  The court disagrees.  Summary judgment motions require thorough, careful review of the record in its entirety, as well as knowledge and marshalling of the facts and applicable law.  The court disagrees that it was

11

unreasonable for Mr. Kelly to spend less than two hours in the development of a potential motion for summary judgment 10 months before filing, a sign of thoughtful case planning and strategy. Further, Fireline requested oral argument; the court finds it reasonable that counsel prepared for less than three hours to ensure readiness should the court order argument.  (ECF No. 61; ECF No. 75-5.)  Accordingly, the court finds the fees fair and reasonable, and will not reduce the total award per Plaintiff's request.

       **vii.**       ***Corporation Disclosure Statement***

Plaintiff contends that Fireline counsel's 3.5 hours spent on its Local Rule 103.3 corporate disclosure statement is unreasonable, as it is merely an administrative document.  (ECF No. 77 at p. 13.)  Fireline responds by detailing the efforts it undertook to explore the position of Fireline's liability insurer and characterizing the insurer's financial interest in the outcome of the litigation. (ECF No. 78 at p. 7.)  Even though the Local Rule 103.3 disclosure is administrative in purpose, Fireline represents to the court that the disclosure here concerned more complex questions than may typically be the case; the court credits this explanation and finds the amount of time spent to be fair and reasonable.

       **viii.**       ***Mediation Statement***

Plaintiff contends that Fireline's accounting of 20.4 hours of time spent drafting and reviewing a mediation statement is excessive in light of Fireline's previous account of the over 60 hours it spent on its summary judgment motion.  (ECF No. 77 at p. 13–14.)  Fireline emphasizes the amount of work its attorneys put into preparing for mediation, which the court does not discredit or challenge.  (ECF No. 78 at p. 7.)  That said, in light of the time and labor required, as well as the degree of novelty of the questions that would be at issue in Fireline's mediation statement, the court notes that some time entries reference that Mr. Kelly was "re-stating

12

arguments" raised in Fireline's summary judgment motion and are, as such, unreasonable.  (ECF No. 75-8.)  The court will reduce Mr. Kelly's entries on April 20, 2023 and April 24, 2023 to two hours total for these entries, which the court finds reasonable as these entries plainly state that Mr. Kelly was utilizing the summary judgment arguments to prepare the petition and yet they total 6.60 hours of the Senior Attorney's time, in addition to the 12 hours Mr. Kelly spent preparing the statement.  The court will accordingly deduct $1,357.00 from Fireline's total award.

### ix.   *Fee Petition*

Plaintiff finally contends that Mr. Kelly's 25.3 hours spent on Fireline's Petition is unreasonably excessive and should have been performed in less time and with the assistance of an administrator.  (ECF No. 77 at p. 14.)  Fireline responds that there was no way for Mr. Kelly to conduct the necessary tasks more efficiently and that a paralegal "could not do what needed to be done." (ECF No. 78 at p. 8.)  Fireline also seeks an additional seven hours of time at Mr. Kelly's rate in connection with its reply.  *Id.*

The court finds that some portion of the work in completing the Petition could have been performed by clerical or administrative staff, but that is not the case with Fireline's reply to Plaintiff's response.  The court will thus reduce the fees incurred identified on July 11 and 12, 2023, which focus on petition review for accuracy and completeness—tasks administrative staff could have assisted with or accomplished.  (ECF No. 75-9.)  The court finds it to be reasonable to reduce the expenses on these two days by half, deducting $988.25 from the total award.  In light of Plaintiff's extensive response to the Petition, the court concludes that Mr. Kelly's seven additional hours expended on its reply to be reasonable.  The court will thus also include an additional fee of $2,065.00 for Fireline's reply.

The court concludes that all other fees and costs detailed in Fireline's Petition are fair and reasonable in accordance with the factors listed *supra*.

### B.  Entry of Final Judgment

With its request for attorneys' fees, Fireline asks the court to enter final judgment under Federal Rule of Civil Procedure 54(b), which it contends was implicit in the court's prior order (ECF No. 73).  (ECF No. 81 at p. 1–2.)  Plaintiff opposes Fireline's request and asserts that the mere fact that Fireline must wait until the conclusion of the litigation for attorneys' fees is insufficient grounds for entry of final judgment.  (ECF No. 85 at p. 3.)

Rule 54(b) provides:

> When an action presents more than one claim for relief—whether as a claim, counterclaim, crossclaim, or third-party claim—or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay.

Fed. R. Civ. P. 54(b).   "Rule 54(b) certification is recognized as the exception rather than the norm."  *United States Liab. Ins. Co. v. Krawatsky*, 610 F. Supp. 3d 745, 748–49 (D. Md. 2022) (quoting *Braswell Shipyards, Inc. v. Beazer East, Inc.*, 2 F.3d 1331, 1335 (4th Cir. 1993)).   "It should neither be granted routinely, nor as an accommodation to counsel."  *Braswell Shipyards, Inc.*, 2 F.3d at 1335.  "The chief purpose of a Rule 54(b) certification is to prevent piecemeal appeals when multiple claims are resolved in the course of a single lawsuit."  *Id.*  However, this is balanced against the risk of undue hardship to litigants "if final judgment is not entered on the adjudicated claim prior to the resolution of the unadjudicated claims."  *Id.*  Therefore, "[j]udgments under Rule 54(b) must be reserved for the unusual case in which the costs and risks of multiplying the number of proceedings and overcrowding the appellate docket are outbalanced by pressing needs of the litigants for an early and separate judgment as to some claims or parties."  *Braswell*

*Shipyards, Inc.*, 2 F.3d at 1335 (quoting *Morrison–Knudsen Co. v. Archer*, 655 F.2d 962, 965 (9th Cir. 1981)).

To certify a judgment as final under Rule 54(b), "the district court must first 'determine whether the judgment is final' and second, 'determine whether there is no just reason for the delay in the entry of judgment.'" *Kinsale Ins. Co. v. JDBC Holdings, Inc.*, 31 F.4th 870, 873 (4th Cir. 2022) (quoting *Braswell Shipyards, Inc.*, 2 F.3d at 1335). The court reviews each factor to determine whether final judgment pursuant to Rule 54(b) is warranted here.

### 1. Finality of Judgment

"[A] 'final decision' generally is one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Id.* (quoting *Catlin v. United States*, 324 U.S. 229, 233 (1945)). A judgment is final where there is "an ultimate disposition of an individual claim entered in the court of a multiple claims action." *Id.* (quoting *MCI Constructors, LLC v. City of Greensboro*, 610 F.3d 849, 855 (4th Cir. 2010)). Notably, however, "[t]he label that a district court attaches to an order it issues does not control." *Id.* at 873–74 (quoting *Liberty Mut. Ins. Co. v. Wetzel*, 424 U.S. 737, 744 (1976). With respect to Fireline's status in this litigation, the only tasks that remain are the award of attorneys' fees, addressed *supra*, and for the court to "execute the judgment." *See Kinsale Ins. Co.*, 31 F.4th at 873, *supra*. With that, Fireline's presence in this litigation is resolved. Accordingly, the first requirement for certification of final judgment is met.

### 2. Just Reason for Delay

"In determining whether there is no just reason for delay in the entry of judgment, the district court is instructed to conduct a 'case-specific' inquiry, keeping in mind that this inquiry is

'tilted from the start against [the] fragmentation of appeals.'" *Id.* at 874 (quoting *Braswell*, 2 F. 3d at 1335). The case-specific inquiry requires the court to consider the following factors:

> (1) the relationship between the adjudicated and unadjudicated claims;
> (2) the possibility that the need for review might or might not be mooted by future developments in the district court;
> (3) the possibility that the reviewing court might be obliged to consider the same issue a second time;
> (4) the presence or absence of a claim or counterclaim which could result in a set-off against the judgment sought to be made final;
> (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like.

*Kinsale Ins. Co.*, 31 F.4th at 874 (quoting *Braswell*, 2 F.3d at 1335–36). The party seeking Rule 54(b) certification bears the burden to show that certification is warranted. *Braswell*, 2 F.3d at 1335.

Plaintiff contends that Fireline has not met its burden to show that certification is warranted because "the mere fact that [Fireline] must wait until completion of this litigation for a potential award of attorney's fees to become enforceable is, respectfully, insufficient grounds for entry of final judgment." (ECF No. 85 at p. 3.) In so doing, Plaintiff relies on *Dickinson v. Crabs on Deck, LLC.*, No. CV PWG-17-3347, 2019 WL 1934485 (D. Md. Apr. 30, 2019). In *Dickinson*, former employees brought action against their former employer for violations of state and federal employment law. *Id.* at *1. Individual plaintiff Dickinson settled his claims against Defendants, and the court subsequently granted Defendants' motion for summary judgment on Dickinson's claim for attorneys' fees. *Id.* Dickinson moved for Rule 54(b) certification. *Id.* The court concluded that Dickinson could not meet his burden "simply by asserting that he will 'have to wait' to file his appeal. Although the claims are undisputedly unrelated, separating them at this

juncture could require [Defendants] to participate in and incur costs and attorneys' fees for two appeals, when it only was sued once and therefore only should face on appeal." *Id.* at *3.

Considering the factors here, like in *Dickinson*, Plaintiff's claims against Fireline are indisputably unrelated to its claims against Chesapeake; therefore it is similarly not likely that the issues raised before a reviewing court would concern the same issues. *See GMAC Mortg., LLC v. Flick Mortg. Invs., Inc.*, No. 3:09-CV-125-RJC-DSC, 2012 WL 1098633, at *4 (W.D.N.C. Mar. 31, 2012) ("The dissimilar nature of the unresolved issues in the two cases are such that it does not appear that an appellate court would have to decide the same issues more than once even if there are subsequent appeals of both the cases." (citations omitted)). For the same reasons, it is unlikely that the need for review related to Plaintiff's claims against Fireline would be affected by the resolution of Plaintiff's claims against Chesapeake. There is similarly no risk of set-off here where there are no issues of damages as to Fireline. The real dispute between the parties seems to focus on the final factor—Fireline focuses on the indeterminate nature of a resolution outside of its control—which is to say until Plaintiff and Chesapeake resolve the matter, likely at trial currently scheduled for November 2024 (ECF No. 81 at p. 1); and Plaintiff contends that delay in payment of attorneys' fees does not pose undue hardship. (ECF No. 85 at p. 3.)

While Plaintiff's point is well-taken that non-binding case law suggests that resolution of attorneys' fees disputes is not an undue hardship warranting certification, the court concludes that final judgment is warranted here. There is both finality to the judgment and analysis of the factors militates in favor of certification; there is no sensible or just reason for delay when compared against the hardship posed to Fireline. *See Kinsale Ins. Co.*, 31 F.4th at 873, *supra*. This is not merely an issue of attorney convenience; this matter has been pending for almost four years, and Fireline's involvement is complete. Issues that might be raised on appeal related to the Plaintiff-

17

Fireline matter are separate and distinct from issues that might be raised on appeal of the Plaintiff-Chesapeake matter.  In the meanwhile, Fireline has been subject to four years of litigation costs and, despite resolution of this matter, is expected to continue to wait.  As of now, this matter is not set to resolve until November of 2024.  (ECF No. 84.)  All factors considered, this case warrants treatment as the "exception." Accordingly, the court concludes that final judgment under Rule 54(b) is just and proper.

## III.    CONCLUSION

For the reasons set forth herein, by separate order, the Petition (ECF No. 75) seeking attorneys' fees and costs will be GRANTED IN PART AND DENIED IN PART, and the court will award to Fireline, as the prevailing party, attorneys' fees and costs in the amount of $117,407.32.  The court also concludes that, by separate order, Fireline is entitled to final judgment under Rule 54(b), and the Motion (ECF No. 81) will be GRANTED.

March 13, 2024

/S/

_____
Julie R. Rubin
United States District Judge